IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

**MS. LONNIE L. JACKSON, #133045**
(aka Ms. Anastacia S. Jackson)

Plaintiff,

Vs.

Case No.: 17 C 350-bbc

**DR. KEVIN KALLAS, MENTAL HEALTH DIRECTOR (BHS)**
**RYAN HOLZMACHER, MEDICAL DIRECTOR, (BHS)**
**JAMES GREERE, MEDICAL ADMINISTRATOR, (BHS)**
**MARY MUSE, RN NURSING DIRECTOR, (BHS)**
**CATHY JESS, WDOC DEPUTY SECRETARY**
**DR. GARY ANKARLO, PSYCHOLOGY DIRECTOR, (BHS)**
**HUGH JOHNSTON, PSYCHIATRY DIRECTOR, (BHS)**
**And John & Jane Dos Gender Dysphoria Committee Members,**

Defendant.

---

### 42 U.S.C. §§1983 CIVIL RIGHTS COMPLAINT

---

I.                   **JURISDICTIONAL STATEMENT**

This is a 1983 Civil Rights Complaint action authorized by 42 U.S.C. Section 1983, that seeks protection and Injunction Relief, as well as both punitive and monetary damages against all named defendant, for the deprivation of the plaintiff's constitutional rights, and violation of both State and Federal Laws against the Wisconsin Department of Corrections, and its Agents and all other parties acting in concert while acting under the Color of State Law in failing to provide the plaintiff with Medical Treatment relating to her Gender Dysphoria.

This Court has jurisdiction under 28 U.S.C. Section 1331(a)(3), wherein the plaintiff seeks Declaratory Relief pursuant to 28 U.S.C. Section 2201 and 2284. Also, plaintiff seeks Injunctive Relief, also under Rule 65 of the Federal Rules of Civil Procedures, as well as both Compensatory and Punitive Damages against all named defendants.

Medical Deliberate Indifferent Claim         1

II.  The Western District Court is an appropriate venue under 28 U.S.C. Section 1391(9)(b)(2), because this is where the events given rise to this law suit and complaint occurred.

## STATEMENT OF THE CASE

The Plaintiff in this action, is a Male –to-Female transgender inmate, and does use female pronouns in all verbal and written communication, and does respectfully request this court and the defendants to use the same. This is a 42 U.S.C. §§1983 Complaint filed by plaintiff listed therein, and makes the following statements of facts as they happened. Plaintiff asserts that she was diagnosed with Gender Dysphoria, and as a direct result, she was placed on Feminizing Hormone. Later she was re-evaluated and it was recommended that she undergo a "Orchiectomy" and if that proved successful, then she would be a good candidate for the Sex Reassignment Surgery (SRS), which is the final phase of her transformation into Womanhood.

Plaintiff contends that because of a blanket and "Prohibition" Policy she is limited to the medical treatment she can get or receive relating to her Gender Dysphoria, whereas these defendants have consistently denied her this treatment based upon the recommendation she received by the Dr. Cynthia Osborne, whom the defendants hired to conduct several evaluations, and allowed Dr. Osborne to make recommendations as to the plaintiff's medical treatment. Because of the defendants denial for treatment, the plaintiff did file several Inmate Complaints alleging and challenging their denial, which were ultimately dismissed at all levels. Plaintiff also attempted to get female makeup,

and hair removal products and Proper Identification ID Cards, which is also consistent with the items approved for all of the female institutions within this State, which were also denied by the administration, wherein the only treatment available for the plaintiff is "Psychotherapy". Plaintiff finally asserts that her present place of confinement does not carry any forms of female hygiene's, nor does the Selected vendors carry any of the products either, so she is left with only hormone treatment that is not helping her Gender Dysphoria. Plaintiff asserts that she was wrongfully discipline for requesting information about the New Medical Doctor whom the WDOC Hired to provide further a second evaluation which was (Steven B. Levine), which the information the plaintiff was seeking was not information that the plaintiff was not allowed to have, and should never had received a Conduct Report for requesting such information,

### III            PRESENT PLACE OF CONFINEMENT

At All times relevant to this action, plaintiff had resided at the Oshkosh Correctional Institution, P.O. Box 3310, Oshkosh, Wisconsin 54903-3310, but is now at the Kettle Moraine Correctional Institution, P.O. Box 282, Plymouth, Wisconsin 53073-0282

### IV            INMATE COMPLAINT SYSTEM

    A.     Is there a grievance Procedure in Plaintiff's Prison? [X] **Yes**

    B.     Have I filed a grievance concerning the facts related to this Complaint? [X] **Yes,**

    C.     All of the Inmate Complaints were denied and Deemed "Moot", and was "Dismissed with modifications", "Dismissed", and "Rejected" and all remedies have been exhausted See attached Complaints,
OSCI-2015-14455, ( 2nd Shower Times),
OSCI-2015-7121 (Orchiectomy Surgery),
OSCI-2015-7501, (Make Up and Electrolysis)
OSCI-2015-21187 (Orchiectomy Surgery)

V     Have you filed any other Lawsuit in either State or Federal Court relating to the same issues presented in this Complain? [X] **No**

VI     **PARTIES (PLAINTIFF(S):**

Ms. Lonnie L. Jackson, Inmate No. #133045,
Social Security No. (Last Four Digits only) **4705**

VII     **PARTIES (DEFENDANTS):**

DR. KEVIN KALLAS, MENTAL HEALTH DIRECTOR (BHS)
RYAN HOLZMACHER, MEDICAL DIRECTOR, (BHS)
JAMES GREERE, MEDICAL ADMINISTRATOR, (BHS)
MARY MUSE, RN NURSING DIRECTOR, (BHS)
CATHY JESS, WDOC DEPUTY SECRETARY
DR. GARY ANKARLO, PSYCHOLOGY DIRECTOR, (BHS)
HUGH JOHNSTON, PSYCHIATRY DIRECTOR, (BHS)
And John & Jane Dos Gender Dysphoria Committee Members,

All of the above Named defendant are Employed by the Wisconsin Department of Corrections, Located at 3099 East Washington Avenue, Madison, Wisconsin 53707-7925

---

**All named defendants are being sued in their Official and Individual Capacities while Acting Under the Color of State Law when the Alleged Violations occurred, and the Plaintiff is requesting a Jury Trial in this Case.**

---

### STATEMENT OF CLAIM

---

Ms. Lonnie L. Jackson is a 50 Year Old Male to Female Transgender Inmate, who would like for the Court to address her using female pronouns, and ask that all address to her, be made both written and verbally. Ms. Jackson is presently taking female hormones for her documented Gender Dysphoria, to assist in feminizing her skin, breast development and other female traits associated with her transformation. In 2011, plaintiff was evaluated several times by Psychological Services (PSU) staff to determine if plaintiff does qualify for

treatment of Gender Dyphoria (GID), now know as "Gender Dysphoria (GD), and was in fact cleared while she was at Waupun Correctional Institution, by then Doctor Todd Callister. After seeing Dr. Callister for several Years, it was determined that plaintiff did meet the requirements needed for GD Treatment.

## STATEMENT OF FACTS

FACT-1    Sometime in 2012, plaintiff requested that she be evaluated for Hormone Therapy, in order to get hormone treatment for her GD condition and symptoms, and was again evaluated by PSU staff, and after being evaluated for the second time by Dr. Leslie Beard, she made a recommendation to Dr. Garbleman, who was her supervisor, that plaintiff be seen by Dr. Cynthia Osborne, for a full evaluation for hormone therapy, and Dr. Garbleman made a recommendation to then Defendant Dr. Kevin Kallas, was the GID Committee Supervisor, which defendant Kallas made the appointment to have the plaintiff seen by Cynthia Osborne.

FACT-2    After reviewing both Dr. Beard's and Dr. Garbleman's report, defendant Kallas made the recommendation to see Dr. Osborne for a full evaluation for hormone therapy. Dr. Osborne met with the plaintiff and conducted a full evaluation for the plaintiff which took more than 5 hours to complete, and when the interview was completed, Dr. Osborne told the plaintiff that she would be putting together a written report of her findings, and submitting her findings to the GIS Committee, along with her recommendation for treatment plan for the

plaintiff. Sometime later in the year, Dr. Osborne summitte4d her report and finds, and made a recommendation to the GID committee, that plaintiff be approved for Hormone Treatment, and the GID committee agreed with the diagnosis made by Dr. Osborne, and sent the plaintiff her confirmation letter approving her treatment plan.

FACT-3    Plaintiff contends that sometime on or about November 5, 2012, she was transferred to Racine Correctional Institution (RCI), where she would meet Dr. Steven Brown, for the purpose of prescribing her h Hormone Medication, per the recommendation of the GID committee, who would then prescribe the proper does of medication for the plaintiff. Plaintiff further contends that on or about January 3, 2013, she started her medication which consisted of (Estradiol, Spironolactone, Medydroxprogestone, Calcium Carbonate, Multivitamin with Iron,) and other medication to address her Dysphoria. On August 24, 2014, plaintiff was again transferred to another institution, which was Oshkosh Correctional Institution, wherein at that institution she was to see Dr. Betsy Luxford, who was the New Hormone Specialist for the Gender Dysphoria inmate like the plaintiff. During that time, Plaintiff made several request to Dr. Luxford, to be evaluated for Sex Reassignment Surgery (SRS), and was told that would have to make that request to her treating psychologist, Dr. Danielle Shellcross, who would then contact defendant Kallas, which the plaintiff followed her instructions.

FACT-4    Plaintiff contends that from April 25, 2014 to February 8, 2015, she made several requests to be re-evaluated for SRS surgery, and Dr. Shellcross

made the recommendation to defendant Kallas, who then made the appointment with Dr. Osborne again, for the plaintiff to be evaluated for Sex Reassignment surgery, and plaintiff met with Dr. Osborne to complete the interview. After the plaintiff met with Dr. Osborne, she again told the plaintiff that she was going to prepare another report and submit that report and her recommendation to the GID committee. Once the report was completed, Dr. Osborne made two (2) recommendations, the first recommendation was for the plaintiff to undergo a "Ochiectomy Surgery" and if that proved to be successful, then the second recommendation would be for the Full SRS, because in her opinion, the plpaintiff would be a good candidate for that surgery. Dr. Osborne further recommended that prior to the Orchiectomy surgery, the plaintiff must get "Psychotherapy" treatment in order for the plaintiff to have the full understanding of what it was going to mean to become a full woman, because once the SRS is completed, there should be no regret, and the plaintiff cannot reverse the treatment, which the plaintiff agreed to do.

FACT-5      After plaintiff consulted with Dr. Shellcross, plaintiff agreed to go through the surgery, and to show that she meant every word and clearly understood what it was she was getting into, the plaintiff drafted her own "Consent Form" and made several copies, of the drafted form, and sent one to Dr. Shellcross, for her PSU file, one to her primary Care Doctor, Dr. Patrick J. Murphy, to be placed in her Medical Files, and she retained a copy of the same document. However, plaintiff later learned that the GD Committee denied her treatment through a "Blanket Policy" and under then Executive Directive 68,

which prohibited any kind of surgery procedures as long as the plaintiff is in the custody and control of the Wisconsin Department of Corrections, Plaintiff then filed a Inmate complaint, Complaint No. OCSI-2015-7121, challenging the prohibition policy and the denial of the Orchiectomy surgery, which was denied, she appealed the denial, but again, it was denied by the Office of the Secretary (OOS).

FACT-6   Plaintiff then requested that she undergo the psychotherapy with Dr. Shellcross, and began her treatment that she agreed to, since it was very important that she get this counseling, which she was very glad to do. Plaintiff contends that she started her sessions sometime in June or July 2016, wherein some of the sessions were started prior to that date specified in her complaint, plaintiff further asserts that everything was going good until September 21, 2016, when plaintiff made a request for information regarding the New Medical Doctor who was supposed to be hired to provide the second evaluation for those diagnosed with either Orchiectomy or Sex Reassignment Surgery, by the Name of Steven B. Levine, and because she requested his BIO, she received a Conduct Report, and charged with "Soliciting a Staff Member" which was a Major Conduct Report. Plaintiff contends that during one of her Sessions with Dr. Shellcross, there was a discussion about the New Doctor, and Dr. Shellcross told the plaintiff that she knew nothing about this doctor, and could not tell the plaintiff anything about him, the plaintiff told Dr. Shellcross that she'll have one of her family members look this New Doctor up on the internet, and when plaintiff get the information, she will share that information with Dr. Shellcross.

FACT-7     When the plaintiff got the Email address from her family, she made out a Green PSU Request Slip, and provided the information of the slip to Dr. Shellcross, and requested what ever information she could provide to the plaintiff. The Plaintiff was called to the Administration building and when she arrived, she was given a Major Conduct report for Soliciting a staff, which was not what she did in the first place, this caused the plaintiff to stop going to get counseling from the only Doctor assigned to deal with the GID inmates, which caused the plaintiff to stop her counseling with Dr. Shellcross, in fear that what ever was discussed in session, she would be punished for it. When the plaintiff went to her Disciplinary Hearing, she was found Guilty of the violation and given a "Reprimand" for her actions, plaintiff tried to explain to the hearing officer that she did nothing wrong, and that she should not be found guilty, but the officer would hear none of it, and now the plaintiff has on her institutional record, a conduct report for soliciting, when it would not be, because prior to plaintiff requesting information about the New Doctor, Dr. Shellcross told the plaintiff that if she wanted information to make sure that it was on a Green Slip (PSU-Slip), and if she wanted information concerning the GID committee, that she is to write the committee in Madison, Wisconsin, but to punish her for make her request and providing the address to her psychologist, is wrong, and unfair to the plaintiff. Plaintiff contends that during her August 8, 2016 9:30am session, she and Dr. Shellcross was discussing the New doctor (Dr. Levine), and based upon that session, plaintiff should not have been discipline for only requesting information she had the right to request, and to do so, sure lets the plaintiff know she can't

get the counseling she needed in fear that what she say can be used against her later. In a Memorandum dated April 7, 2015, Dr. Shellcross sent out to all of the GID Inmates, informing them on the proper way to request information, and plaintiff followed that memorandum, and was punished for following it, that was abuse of authority by Dr. Shellcross.

FACT-8    Plaintiff made several request from at the institutional level to be able to shower more than once a day, in that she and other transgender inmates felt that it was unfair that they be allowed only one shower a day, and filed a complaint against it see Inmate Complaint No. OSCI-2015-14455, which was dismissed, and plaintiff was never given another time to take showers, however, all of the other inmates were allowed as many shower as they want, and the transgender inmates had to wait until 10:00pm to take their showers, which shows discrimination against them for being transgender, and told that if they take a shower outside of the time allowed for them, it would be at their own risk, so plainitiff and other transgender inmates had to sit in dirty cloths for the whole day before they could take a proper shower. Plaintiff requested Make up, Hair Removal products, to help get both body hair and facial hair off since "Magic Shave" was way to harsh for them to [put on their skin, and that was denied pursuant to the blanket policy DAI Policy 500.70.27, see Complaint No. OSCI-2015-7501. Plaintiff then made another request for her Orchiectomy Surgery, and again was denied, but the committee, see Complaint No. OSCI-2016-21187, and plaintiff asserts that other than Hormone Therapy, there is no other alternative medical treatment for her Gender Dysphoria, because of the blanket policy that

WDOC insist on implementing, even though Executive Directive 68 was rescinded, the defendant placed the same restrictions in the New DAI Policy 500.70.27, which was against the Law, as cited in the Fields v. Smith, 712 F. Supp. 2d 830 (E.D. Wis. 2010); Fields, 653 F. 3d 550 (7th Cir. 2011).

FACT-9   Plaintiff further asserts that she is consistently being denied and being told "Their Working On It, be Patient" every time she request to have her medical treatment done by the WDOC, and does asserts that this is a systematic custom and practice of the WDOC to deny treatment to the Transgender inmates like the plaintiff, in violation of their Constitutional Rights to fair treatment. The defendants are telling the plaintiff they are not denying her the treatment, they are not just giving her the required treatment, because its not an approved treatment under their policies and procedures and it is prohibited. Meanwhile, the plaintiff is suffering serious pain and discomfort, because she is very displeased with her male gentiles, whereas each day that goes by, she continue to suffer and only thinks about self mutilation, suicidal thoughts, and racing thoughts about harming herself, and a sheer displeasure with the male parts that she has, and is only getting worse by the day, she is very afraid of telling the PSU staff her thoughts, in fear that she'll be locked up in segregation for a long period of time, which is what happens when inmates and prisoners share their feelings with staff, she is not allowed to life out the "Real Life Experience" (RLE), which is one of the three triads listed in the Standard of Care, under the WPATH, "International Journal of Transgenderism, which was created by the World Professional Association for Transgender Health Organization, titled Standards

of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People, Version 7, see attached Standards of Care Packet, because the written policy, rules and procedures prohibits it, and she is being told that she has to appear DAI Policy 500.70.27 clearly ask that all staff refer to the transgender community using "Gender Neutral Names", look like a boy, dress like a boy and act like a boy, while she is in a "Man's Prison" because she is in a man's prison, the correctional staff all refer to the plaintiff as either "Him, Man, or Sir" despite the fact that the DAI Policy 500.70.27, however, in the same policy, the policy allows the plaintiff and other transgender inmates to be able to use the prefix "Ms. Or Miss" on all of their correspondences, outgoing mail, and incoming mail, but she is not allowed any feminizing cosmetics, no make up of any kind, however, the policy allows the plaintiff to express her chosen gender, which is a contradiction to the policy but she can't look like her chosen gender, because if she does allow herself to look like a girl, she faces punishment by the administration for attempting to disguise her identify, and her hair must conform to that of a boy, and not that of a girl. Plaintiff further asserts that because of the way she must live, and the fact that there is no other alternative treatment for her condition, she has entered a severe stage of "Depression" to a point that she is on serious medication for her depression, stress, anxiety, and the more time kit takes the defendants to make up their minds, on the kind of medical treatment to give the plaintiff, the further risk she will be in, and the need to self mutilate herself is great, and if she can't get the Orchiectomy or the sex reassignment

Medical Deliberate Indifferent Claim               12

surgery, then her only option will be to take her own life, because, she can't live like she is living, because she is not a boy, she is a Woman.

FACT-10    When the plaintiff does go to segregation, there is no form of hair removal product available for her and she must grow a Beard and facial hair and only can get a hair cut once a month, otherwise she has to look like a man, which only adds to her depression, suffering and pain, all she gets from the defendants is **"there is nothing we can do, do the best you can"** attitude.

This Blanket Policy that the defendants has put into place, is harming the plaintiff and nothing is being done to ease her pain, except she is being told to act like a man, because she is in a man's institution, and she can't be moved to a female institution, because she has male genitals. Plaintiff contends that from September 24 through March of 2017, she has made several request for treatment and have gotten none, except for hormone treatment, because of the DAI Policy 500.70.27. Plaintiff further states that the Fields case allowed the defendant to provide the treatment she needed, and told the defendants that they cannot limit medically necessary treatment, and SRS was part of the Law Suit filed in the Fields case, but the defendants refused to honor the language and directions of the High Court, and the Seventh Circuit Court of Appeals, because of the public image, and the false sense of security the defendants have about what the public will think, they are denying the plaintiff and other inmates who are transgender the right to be treated, and has refused to all the plaintiff to be treated with the only remedy available for her condition, and that is the Sex Reassignment Surgery, with the Orchiectomy Surgery. Plaintiff contends that the

Defendant have made it clear, that Wisconsin inmates will never get the treatment they deserve while they are in the custody of the WDOC, and they have legal counsel who will see to it that the policies in place will stand, and no further treatment will be given except for counseling, that's it. Plaintiff feels that the only way to ease her pain and suffering, is to get the medically necessary treatment relating to SRS and Orchiectomy Surgery, and not excuses from the defendants.

FACT-11    Plaintiff further asserts that the WDOC is not concern about her safety and health situation, because she is always housed with Non-Transgender inmates, who don't want to be housed with her, and the defendants are telling the plaintiff that she has to get along with all her cellmates. She has no privacy when she tries to undress and change cloths, because the present cellmate refuses to leave the room, saying that they don't have to leave, because it's their room too, and that poses a serious problem for the plaintiff, a problem that can be rendered by simply placing the plaintiff in a "Single cell" which can be done, however, the defendants claim that there is no rooms available to accomplish this, however, the present regular housing staff has made it very clear, that housing the plaintiff in a single cell, would make it a lot easier for both the plaintiff and the officers who are in charge of the unit, but the defendants still will not listen to the staff or the plaintiff.

FACT-12    Plaintiff is very fearful for her safety especially after she was sexually assaulted and had to file a PREA against the inmate who assaulted her back on March 25, 2016, which is clearly documented, and every since that

14

incident, plaintiff has been in fear of male inmates, and have expressed this fear to both institutional security staff, and her psychologist, and the outside counselor that she sees every two weeks, and the defendants have made it a point not to hear the cries of the plaintiff, but simply told the plaintiff, things like this happens, you just have to get over this, there is nothing we can do at this time, meanwhile, the plaintiff must suffer being housed in a cell with a male inmate, always in fear of her safety, which is not fair to her or any other transgender inmate. Plaintiff has learned that other transgender inmates such as her, already are in single cells, but for some reason, the plaintiff is isolated from them, housed in another building, and does not get to see any of the other transgender inmates, and when she asks to be place around other transgender inmates, her request is denied.

FACT-13   All of the other transgender inmates are Caucasian and one Hispanic, and the plaintiff is the only African American Transgender inmate within her facility, and ever time she request from security staff to be housed with the other transgender inmates, she is denied, and when she request to be single cell, she is being told that they don't do that in her present place of confinement, however, when the plaintiff check with other inmates on the other housing unit that houses the other transgender inmates, she is being told that all of them are in a single cell, but for some reason, the plaintiff is being singled out, and not being treated like the rest of the transgender and she is very convinced that because she is the only African American transgender inmate in her facility, it is for that reason why she cannot be housed with all of the other transgender inmate. She is being told by the institutional staff, that it is not related to her race,

nor ethnic background, it's only a staffing problem, and when she went to her Center Program Supervisor and requested to be housed with the rest of the transgender inmates, she was told that she could not because it would cause a "Management Problem" when there are only 2-3 transgender inmates housed on Unit-8, and one Caucasian transgender housed on Unit-7, at the present time, she is the only transgender inmate on her unit, and most of the other inmates do not want to be housed with her simply because she is transgender.

FACT-14    Plaintiff further asserts that a day does not go by when she feels segregated from the rest of the transgender inmates, nor does a day goes by when she feels the need to castrate herself in order for her to coupe with her present situation, and the defendants surely have presented an issue that her safety and mental health is not being addressed, and she is being told by the other correctional staff, that it's the way it is, and that they don't have the proper authority to make moves for the plaintiff, in order to accommodate her needs, but that it's up to the Center Program Supervisor (CPS), which at the present time, he does not feel moving the plaintiff with the other transgender inmates is a good move, but have not expressed his decision to the plaintiff, and that plaintiff is relying on the unit correctional staff to provide her feed-back from the (CPS), because each time she makes her position known to her (CPS) all she get from him is that he's working on the matter. She consistently express to the other correctional staff that she feels unsafe by living with non-transgender inmate, which is solely based upon her fear that she will be sexually assaulted again, and will have to get more counseling, because putting her with non-transgender

16

inmates, does pose a serious risk of further harm to her, and both security and the (CPS) are not looking into the matter in the plaintiff's point of view.

FACT-15     Plaintiff further contends that with the DAI 500.72.27 policy, one of the criteria for placement of transgender inmate, is to get the transgender input relating to placement and possible housing, and the defendants have refused to involve the plaintiff into their decision making, and refuse to hear her cries for help, but keep citing WDOC policies that she don't get to pick who her cellmate is nor what housing unit she is placed in, and that what ever cellmate she gets, she has to live with it and deal with it, because she is in prison. Plaintiff further asserts that at night, she has to wait until her cellmate goes to sleep first, before she can feel comfortable sleeping herself, and has to be the first one on the room to wake up, in fear that her cellmate with assault her because she has breast, it is those fears that the plaintiff feels that allowing her to be single celled could remedy the problem. Plaintiff also asserts that since she moved to her present place of confinement, she has had to fight with administration into getting all of the same treatment as the other transgender inmates, and especially with Health Service Unit (HSU) medical staff, because since her arrival back on January 19, 2017, all of her medical restrictions and some medication has been taken from her.

FACT-16     Prior to coming to Kettle Moraine Correctional Institution, she was prescribed Orthopedic Shoes and Orthotics, because of a serious problem with callous growth on the heels of her feet, Muscle Rub for her Lower Back problems, and Naproxen 500mg. to ease her lower back pains, however, since

17

she came to KMCI, she has been told that she has t purchase all of those medications and footwear from the Canteen Catalog, when she is "Indigent" and have no funds to buy them in the first place, and secondly, the institutional Canteen Catalogs don't provide "Custom Orthotics nor Custom made Shoes" for the plaintiff, based upon a memorandum that was put out by the Bureau of Health Services, however, prior to coming to her present place of confinement, she was provided all of the above mentioned medications and custom footwear, not she gets nothing, and the reason that is being given to her, has to do with cost saving, while the plaintiff's medical conditions get worse by the day. Her medical needs are surely not being met at her present place of confinement, and when the plaintiff does complain, her request goes on deaf ears, and the HSU Manager refuses to honor her medical request, and simply tells her to make due with what she has, which is "Nothing", because she can't afford to go to canteen to get what she needs to address her medical needs, and she is being denied medical treatment.

## CASE OF AUTHORITY

Estelle v. Gamble, 429 U.S. 97, 97 S. CT. 285 (1976); Jackson v. Hamblin, 2014 U.S. Dist. Lexis 92401, Case no. 12-CV-1035 (E.D. Wis. 2014); Monell v. Department of Social Services, City of New York, 436 U.S. 658, 98 S. Ct. 2018; (quoting Adickes S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)); City of Canton v. Harris, 109 S. Ct. 1197 (1989); City of Oklahoma v. Tuttle, 471 U.S. 808 (1985); Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995 (1982); Howell v. Evans, 922 F. 2d 712, 720, n.7 (7th Cir. 2000)

## RELIEF REQUESTED

Plaintiff moves this court to grant her relief against the named defendants, for the deprivation bestowed upon her by these defendants, and hold all named defendants accountable for their actions, wrongful acts and conduct, and seeks the following relief;

1. ### Compensatory Damages:

Award the amount of **$185, 000.00** against each of the named defendants for violations of the Eighth Amendments Right to Medical Treatment, for being Deliberate Indifference to the plaintiff's Medical Needs, and violation of both State and Federal Laws relating to Medical Care Denial

2. ### Declaratory Relief:

Declared that the defendants actions were the direct result of a Blanket Policy, Custom and Practice, and in violation of plaintiff's secured constitutional rights to Medical Treatment and hold that these defendants actions pursuant to DAI 500.72.27 is Unconstitutional on both its face and the Law, and does violate the conditions set out in the Fields v. Smith, decision and the Constitution of the United States, under the Eighth Amendment.

3. ### Preliminary Injunctive Relief:

That the WDOC and its agents remove the prohibition out of DAI Policy 500.72.27, and order that they provide the plaintiff with the recommended Medical Treatment given by Dr. Cynthia Osborne, which was the Orchiectomy and the SRS Surgery, pursuant to the recommendation laid out in Dr. Osborne's Written Report, that was submitted to the Court by the plaintiff, also allow the plaintiff to live as a female and be recognized at a Female and allowed to wear light Makeup pursuant to her gender.

4. ### Punitive Damages:

Award the amount of **$350,000.00** against each of the defendants as a reminder that Constitutional Right violations and false Prohibitions does have consequences and that State Employees are not above the Law, and must follow the Law.

Dated this _____ day of _____ 2017

Respectfully submitted by:
Ms. Lonnie L. Jackson-Plaintiff